IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SHERRY L. CURRIE,

      Plaintiff,

v.

NANCY A. BERRYHILL, *Acting Commissioner of Social Security*,[1]

      Defendant.

CIVIL ACTION FILE NO.:

1:16-cv-1308-TWT-JKL

## FINAL REPORT AND RECOMMENDATION

Plaintiff Sherry L. Currie seeks judicial review of the final decision of the Defendant Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits. Plaintiff presents two issues for this Court's consideration: (1) whether the administrative law judge ("ALJ") erred by failing to find at step two of the familiar five-step sequential evaluation that Plaintiff's

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security in January 2017. In accordance with the last sentence of 42 U.S.C. § 405(g) and Rule 25 of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this action.

diagnosis of vasovagal syncope[2] did not qualify as a severe impairment; and (2) whether the ALJ erred by ignoring portions of Plaintiff's treating physician's progress notes despite according great weight to the physician's opinion.  After careful consideration of the record and the briefs of the parties, I find that neither enumeration of error has merit.  Accordingly, I **RECOMMEND** that the decision of the Commissioner be **AFFIRMED**.

## I.    Applicable Standards

### A.    Standard of Review

In reviewing the Commissioner's decision, this Court must give deference to the ALJ's findings of fact, and may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015), *cert. denied* 136 S. Ct. 2487 (2016); *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam).  This Court's only role is to determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  42 U.S.C. § 405(g); *Walden v.*

_____

[2] Vasovagal syncope "occurs when you faint because your body overreacts to certain triggers, such as the sight of blood or extreme emotional distress."  *See* http://www.mayoclinic.org/diseases-conditions/vasovagal-syncope/home/ovc-20184773 (last visited June 6, 2017).

*Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).  It may be present even if a preponderance of the evidence weighs in favor of the claimant. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *see also Hunter*, 808 F.3d at 822 ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.").

In contrast to the ALJ's findings of fact, no presumption of validity attaches to the ALJ's application of the law. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  If the Court finds that the ALJ erred in the application of the law, failed to clearly state the weight accorded to the evidence, or failed to provide sufficient basis for determining that the proper legal analysis was conducted, the decision must be reversed. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991); *see also Ryan v. Heckler*, 762 F.2d 939, 941-42 (11th Cir. 1985) (the ALJ must "state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered"); *Owens v. Heckler*,

748 F.2d 1511, 1514 (11th Cir. 1984) (the Commissioner must engage in "reasoned decision making").

### B.     The Five-Step Sequential Analysis

A person who applies for Social Security disability benefits must prove her disability.  *See* 20 C.F.R. § 404.1512.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability, the claimant's physical or mental impairment must be so severe that she is unable to do her previous work and "cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Under the regulations promulgated by the Commissioner, a five-step sequential analysis must be followed when evaluating a disability claim.  20 C.F.R. § 404.1520(a).  The analysis is as follows:

1.     The ALJ first determines whether the claimant is currently working; if so, the claim is denied.

4

2.      The ALJ determines solely on the basis of the medical evidence whether the claimed impairment is severe; if not, the claim is denied.

3.      The ALJ decides, again, only using medical evidence, whether the impairment equals or exceeds in severity certain impairments described in the Commissioner's Listing of Impairments; if it does, the claimant is automatically entitled to disability benefits.

4.      The ALJ considers whether the claimant has sufficient "residual functional capacity" ("RFC"), defined as what an individual "can still do despite his limitations," to perform the claimant's past work; if so, the claim is denied.

5.      The ALJ decides, on the basis of the claimant's age, education, work experience, and RFC, whether the claimant can perform any other gainful and substantial work that exists in the national economy.

20 C.F.R. § 404.1520(a)(4).

## II.    Background

Plaintiff was 56 years old at the time of her alleged onset date and 59 at the time of the ALJ's unfavorable decision.  (Tr. 19, 222.)  She has a high school

education and past work as a sales manager and sales representative for a wireless telecommunications company. (Tr. 226-27.)

On March 28, 2013, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning on October 5, 2012, due to depression, anxiety, post traumatic stress disorder ("PTSD") and panic attacks. (Tr. 22, 222, 225.) The Social Security Administration denied the application initially and on reconsideration. (Tr. 69, 84.) Plaintiff requested a hearing before an ALJ, and on January 8, 2015, an ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 37-57.)

On September 25, 2015, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. (Tr. 22-32.) Applying the five-step sequential process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 5, 2012. (Tr. 24.) At step two, the ALJ found that Plaintiff had the following impairments that were severe in combination: PTSD, anxiety with panic attacks, and depression. (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. §§ 404.1525 and 404.1426.

6

The ALJ next assessed Plaintiff's RFC and concluded that she could perform a full range of work at all exertional levels but with the following nonexertional limitations: she could perform simple and some moderately detailed instructions; she would be limited to work in low social demand settings (*i.e.*, work requiring no more than superficial contact with the public); she would be able to interact appropriately with coworkers and supervisors; and she would be able to adapt to changes after an initial adjustment period.  (Tr. 26.)  At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work.  (Tr. 31.)  Finally, at step five, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (*Id.*)  Therefore, the ALJ concluded that Plaintiff was not disabled from October 5, 2012 through the date of the decision, September 25, 2015.  (Tr. 32.)

Plaintiff requested review of the decision with the Appeals Council.  The Appeals Council denied the request for review (Tr. 1-7), making the ALJ's decision the final decision of the Commissioner.  Plaintiff then filed the present action.

### III.   Discussion

### A.   Issue One:  The ALJ's Determination at Step Two

#### 1.   Arguments of the Parties

Plaintiff argues that the ALJ erred at step two of the sequential evaluation by failing to find that vasovagal syncope was a severe impairment.  [Doc. 7 at 7-11.]  Plaintiff contends that the record is replete with evidence that Plaintiff was diagnosed with vasovagal syncope and that she frequently experienced syncopal episodes (*i.e.*, fainting), triggered by stressful events.  [*Id.* at 7-8.]  She also refers to her own testimony at the administrative hearing that that she would experience episodes of fainting when she became panicked or stressed.  [*Id.* at 8-9.]  Plaintiff acknowledges that the ALJ referred to vasovagal syncope twice in the decision, but contends that the ALJ's findings are contrary to "the frequency and consistency of the diagnosis in the record," including the "significant number of hospitalizations, opinions of medical providers, and frequency of subjective complaints that do support the diagnosis."  [*Id.* at 9-10.]

The Commissioner responds that although the ALJ did not specifically state whether Plaintiff's vasovagal syncope was severe or non-severe, any error at step two was harmless because the ALJ found that Plaintiff had severe

impairments of anxiety and panic attacks, which encompass vasovagal syncope. [Doc. 8 at 5-6.] The Commissioner also argues that, assuming that the ALJ erred by not finding that vasovagal syncope was a severe impairment at step two, the error was harmless because the ALJ considered Plaintiff's impairments, both severe and non-severe, at the later steps of the sequential process. [*Id.* at 6.] Finally, the Commissioner argues that the record demonstrates that Plaintiff's vasovagal syncope was not a severe impairment because it had stabilized in April 2013 and Plaintiff did not show that the condition caused any functional limitations that were not considered by the ALJ. [*Id.* at 9-10.]

### B.    Analysis

At step two of the sequential analysis, the ALJ must determine whether the claimant has a "severe impairment"–*i.e.*, an impairment that significantly limits one's ability to perform "basic work activities" for at least 12 consecutive months. *See* 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii); 404.1520(c); 404.1521; *see also* Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 at *1. The claimant bears the burden of demonstrating that such impairment significantly affects her ability to perform basic work activities. *See McDaniel v. Bowen*, 800

F.2d 1026, 1031 (11th Cir. 1986); *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) (per curiam).

The Eleventh Circuit has described step two as a "filter" to cull out claims where the claimant has no substantial impairments, and is therefore not disabled under the Social Security Act. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). "[I]f no severe impairment is shown the claim is denied, but the finding of severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough" to proceed with the rest of the five-step analysis." *Id.* Consequently, the Eleventh Circuit has repeatedly held that there is no need for an ALJ to identify every severe impairment at step two. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 950 (11th Cir. 2014) ("Based on our precedent and the regulations . . . it is apparent that there is no need for an ALJ to identify every severe impairment at step two."); *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 891 (11th Cir. 2013) ("[T]he finding of any severe impairment, whether or not it qualifies as a disability, is enough to satisfy the requirement of step two of the sequential evaluation process."); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir.

10

2010) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe.").  The pertinent inquiry instead is whether the ALJ considered limitations from the nonsevere impairments at the later steps of the sequential analysis.  Thus, if a claimant has other impairments that the ALJ should have determined to be "severe impairments," any error in failing failure to do so is harmless if the ALJ assesses the limitations of all medically determinable impairments in the later steps of the analysis.  *See Medina v. Soc. Sec. Admin.*, 636 F. App'x 490, 492-93 (11th Cir. 2016) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)); *see also Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) ("Once a case advances beyond step two, the ALJ must consider all impairments, severe or not, at step three and in assessing the RFC.") (citing *Bowen v. Heckler*, 748 F.2d 629, 634-35 (11th Cir. 1984)); *Jamison*, 814 F.2d at 588 (the ALJ should consider a claimant's "medical condition taken as a whole" at steps three, four, and five of the sequential evaluation).

I conclude that remanding this case for a determination as to whether Plaintiff's vasovagal syncope is a severe impairment is unnecessary.  Even assuming the ALJ erred at step two, any error was harmless.  The ALJ found that

11

Plaintiff suffered from severe impairments other than vasovagal syncope – specifically, PTSD, anxiety with panic attacks, and depression – and then proceeded to the next steps of the sequential analysis where she explicitly considered Plaintiff's syncopal episodes in evaluating Plaintiff's RFC. (*See* Tr. 24-32.) Plaintiff makes no argument that the ALJ's failure to conclude that her vasovagal syncope was severe affected any later steps of the analysis. *Cf. Medina*, 636 F. App'x at 492-93 (holding that claimant did not establish error at step four where ALJ stated that he had considered all the claimant's symptoms and opinion evidence and the decision included a discussion of the degree of limitation caused non-severe impairments and other unclassified conditions). Plaintiff also makes no argument and points to no evidence to suggest that her syncopal episodes imposed any greater limitations on her functional capacity than those attributable to the symptoms of her panic attacks, anxiety, PTSD, and depression. See *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (stating that "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work") (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). In the absence of

evidence (or argument) that Plaintiff's vasovagal syncope affected her ability to work in a way not accounted for by the ALJ, any error in failing to characterize the diagnosis as a severe impairment was harmless and remand is unnecessary. *See Gray*, 550 F. App'x at 853 (conclusion that claimant's cervical spine impairment was not severe, even if erroneous, was harmless where ALJ proceeded with sequential analysis); *Jackson v. Colvin*, No. 1:14-CV-01868-AJB, 2015 WL 5601876, at *13 (N.D. Ga. Sept. 23, 2015) (same, with respect to severe cognitive disorder diagnosis).[3]   Accordingly, I conclude that Plaintiff's first enumeration of error is without merit.

---

[3] Plaintiff relies heavily on a decision from the Southern District of Georgia, *Moraetes v. Colvin*, No. CV 115-026, 2016 WL 2944684 (S.D. Ga. May 20, 2016), *report and recommendation adopted*, 2016 WL 3360516 (S.D. Ga. June 14, 2016), where the court remanded because substantial evidence did not support the ALJ's conclusion at step two that the claimant's headaches were nonsevere.  [*See* Doc. 7 at 7-11.]  I do not find that case applicable or persuasive. First, Plaintiff repeatedly refers to *Moraetes* as decision of the Eleventh Circuit Court of Appeals.  [*See* Doc. 7 at 7.]  It is not.  It is a decision of a district court, and, obviously, is not binding on this Court.  Second, I do not find the reasoning of *Moraetes* applicable here because that court did not consider whether the ALJ's failure to find migraine headaches to be severe was harmless error under *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987), or the many other cases in this Circuit applying the harmless error rule in *Jamison*.

### C.     Issue Two:  Treating Physician's Statements

#### 1.     Arguments of the Parties

Plaintiff next argues that the ALJ failed to consider the opinion of treating physician Dr. Weinberg in its entirety, despite according great weight to his opinion.  [Doc. 7 at 11-13.]  Plaintiff specifically argues that the ALJ failed to consider Dr. Weinberg's opinions that Plaintiff's ability to concentrate was impaired and that she was overwhelmed by anxiety and dysphoria.  [*Id.* at 12 (citing Tr. 372, 376, 476, 487-88, 548).]  The statements that Plaintiff contends that the ALJ ignored are as follows:

1. A statement from a progress note dated January 1, 2013, in which Dr. Weinberg writes: "Her concentration is severely impaired, crying episodes are occurring on a daily basis, quite frequently."  (Tr. 548.)

2. Dr. Weinberg's statement in a January 31, 2013 progress note that "she is frequently tearful, is having severe problems with concentration and focus to the point she has difficulties completing routine paperwork; it is clear that she is in no condition to continue working, and will be seeking long term disability."  (Tr. 522.)

14

3. Dr. Weinberg's statement, also in the January 31, 2013 progress note, that mental examination "reveals consistent difficulties with racing ad over-active thought processes interfering with her concentration". (Tr. 524.)

4. Dr. Weinberg's statement in a March 13, 2013 progress note that "[s]he was clearly overwhelmed with anxiety and dysphoria, shaking like a leaf from the time she came into the interview, and had been shaking prior to entry" and that "She clearly is remaining incapable of returning to work." (Tr. 487-88.)

5. Dr. Weinberg's statement in a March 27, 2013 progress note that "[h]er emotions are both overwhelming to her and overwhelming her. Her capacity to remain focused and on task is clearly seriously impaired by her anxiety and depression as well as the multiplicity of PTSD symptoms." (Tr. 476.)

The Commissioner responds that the ALJ did consider Dr. Weinberg's treatment notes and that Plaintiff fails to acknowledge her improvement while under Dr. Weinberg's care. [Doc. 8 at 10-15.]

15

### 2.     Dr. Weinberg's Treatment History

In the autumn of 2012, Plaintiff presented to Kaiser Permanente for treatment relating to anxiety, stress, and episodes of fainting due to, among other things, the recent deaths of her mother and other loved ones as well as occupational stress.  (*See* Tr. 401, 408-10, 413, 414-15.)  In October 2012, she began attending individual and group therapy sessions at a Kaiser Permanente-affiliated practice.  (Tr. 583.)

Plaintiff first saw Dr. Weinberg, a psychiatrist affiliated with Kaiser Permanente, in December 2012.  (Tr. 547-53.)  She presented with complaints of significant depression, a self-described "severe" inability to concentrate, and crying episodes on a daily basis.  (Tr. 548.)  Dr. Weinberg performed a mental status examination, which revealed that Plaintiff was cooperative, related well, maintained appropriate eye contact, and that she demonstrated no unusual behaviors or mannerisms.  (Tr. 551.)  Her speech rate and pattern were generally normal, and there were no signs of cognitive disorganization.  Dr. Weinberg noted that her mood was "depressed," that her affect was full range and appropriate to the content of their discussion, although he observed an underpinning of dysphoria.  Evaluation of thought content and processes revealed

16

an absence of racing thoughts, audible thoughts, hallucinations, and other signs of psychotic processes.  She was alert, fully oriented, and without gross memory or cognitive deficits.  (*Id.*)

Dr. Weinberg assessed her then-current level of depression as "debilitating" and noted that she was "woefully undermedicated."  (Tr. 551.)  He diagnosed major depression, recurrent, severe, and PTSD, and assigned a Global Assessment of Functioning ("GAF") score of 54.[4]  He recommended increasing Plaintiff's current medications and that she continue to attend intensive outpatient therapy due to the "multiple persistent symptoms and areas of conflict."  (*Id.*)

In January 2013, Plaintiff returned to Dr. Weinberg for a follow-up.  (Tr. 521-26.)  She reported that she had been frequently tearful and had severe problems with concentration and focus, including difficulty completing routine paperwork.  (Tr. 522.)  She also reported feelings of loss due the death of her mother.  (*Id.*)  Examination revealed that Plaintiff was tremulous and teary-eyed, and valuation of thought content and processes indicated consistent difficulties

---

[4] GAF is a mental health rating on a scale of 0-100 that estimates a person's psychological, social, and occupational capacities.  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed. text rev. 2000) ("DSM IV").  A score of 51 through 60 reflects moderate symptoms, such as flat affect or occasional panic attacks, or a moderate difficulty in social, occupational, or school settings.  DSM-IV at 34

with racing and over-active thought processes, which interfered with her concentration. (Tr. 524.) She did not have audible thoughts, paranoid referential ideation, auditory or visual hallucinations, or other signs of psychotic processes. (*Id.*) She was alert, fully oriented, and without gross memory or cognitive deficits. Her insight, judgment, and impulse control were also appropriate. (*Id.*) Dr. Weinberg noted that Plaintiff appeared to be in greater distress than in prior visits, which was likely a function of a having gone through her mother's belongings the previous weekend and her need to pursue long-tern disability benefits while she continued her treatment. (Tr. 525.) He diagnosed PTSD; major depression, recurrent, severe; and chronic anxiety with panic, and he assigned a GAF score of 58. (*Id.*) He recommended additional anxiety medication and to continue with therapy. (Tr. 525-26.)

In February 2013, Plaintiff returned to Dr. Weinberg for follow-up. (Tr. 500-05.) She reported that the previous week she had disclosed trauma, including childhood sexual trauma, during therapy and that she felt exhausted and continued to feel overwhelmed with difficulty concentrating and organizing her thoughts. (Tr. 500.) A mental status examination revealed that Plaintiff was cooperative, related well, maintained appropriate eye contact, and presented

"considerably less anxious than during [their] last visit, though she appears tired with a strained expression."   (Tr. 503.)   Evaluation of thought content and processes revealed fewer difficulties with racing and over-active thought processes, but she continued to experience difficulties with concentration.  Dr. Weinberg noted that she was experiencing an increase in panic symptoms, and accordingly increased her medication.  (*Id.*)  He assessed a GAF score of 56.  (Tr. 504.)  He noted that she was "manifesting her survivor capacities as she moves forward through a swamp of emotions" and that "[d]espite feeling overwhelmed, she is clearly committed to continuing her forward movement in her therapy despite her pain."  (Tr. 503.)

In March 2013, Plaintiff met with Dr. Weinberg immediately following a group therapy session.  (Tr. 484-89.)  She was trembling and reported to Dr. Weinberg that she had experienced childhood sexual abuse, and that she was experiencing significant somotosensory and visual flashbacks.  (Tr. 484.)  Dr. Weinberg described her as "clearly overwhelmed with anxiety and dysphoria, shaking like a leaf from the time she came into the interview, and had been shaking prior to entry."  (Tr. 487.)  Evaluation of her thought content and processes revealed persistent racing and ruminative thinking, including feelings

of guilt and responsibility regarding her childhood sexual trauma.  She was alert, fully oriented, and without gross memory or cognitive deficits, and her insight, judgment, and impulse control were all appropriate.  Dr. Weinberg noted that Plaintiff felt exposed by her discussions regarding her childhood trauma, which unleashed an overwhelming number of emotions, including guilt.  (*Id.*)  He opined that she remained incapable of returning to work for another four to eight weeks as she continued therapy.  (Tr. 487-88.)  He assessed Plaintiff with a GAF score of 47-55.  (Tr. 488.)

Later in March, Plaintiff again met with Dr. Weinberg for follow-up.  (Tr. 473-78.)  On mental examination, she was noted to be mildly tremulous and anxious in her appearance with dysphoric affect, frequent teariness, and a sense of raw vulnerability.  (Tr. 476.)  She was alert, fully oriented and without gross memory or cognitive deficits, and her insight, judgment and impulse control were all appropriate.  (*Id.*)  Dr. Weinberg noted that Plaintiff was making substantial progress, but that she remained intensely symptomatic, easily overwhelmed, and in a pervasive struggle to make sense of her past and regains a sense of identity separate from her occupational functioning.  (*Id.*)  He kept her current medication regimen, encouraged her to use Xanax more liberally, and recommended that she

continue individual therapy sessions.  (Tr. 476-77.)  Dr. Weinberg assigned a GAF score of 51-57.  (Tr. 477.)

In April 2013, Plaintiff presented to Dr. Weinberg for a follow-up.  (Tr. 450-55.)  He noted that she was anxious in appearance but in less distress than in the previous encounters.  (Tr. 451, 453-54.)  Mental examination revealed PTSD-related symptoms and an absence of racing thoughts, audible thoughts, paranoid referential ideation, hallucinations, or other signs psychotic processes.  (Tr. 454.)  She was alert, fully oriented and without gross memory or cognitive deficits, and her insight, judgment and impulse control were all appropriate.  (*Id.*)  Dr. Weinberg noted that Plaintiff was approaching a point when she would be able to transition to a lower level of care.  He increased her medications and recommended a trial of Adderall to treat her inability to concentrate. (Tr. 454, *see also* Tr. 447 (reporting that Dr. Weinberg prescribed Adderall, which has "helped her get some things done").)  He also assessed a GAF score of 56.  (*Id.*)

Later in April 2013, Plaintiff returned to Dr. Weinberg for follow-up.  (Tr. 438-43.)  She reported that she felt that she was "doing better," but that she remained anxious regarding the termination of her group therapy sessions.  (Tr. 441)  Plaintiff demonstrated no unusual behavior or mannerisms during the

21

mental examination, and she described her mood as "pretty good but anxious." Dr. Weinberg noted that she remained "mildly anxious but less intensely so than in virtually all previous contacts." (Tr. 441.) He noted an absence of racing thoughts, audible thoughts, hallucinations, or other signs of psychotic processes. She was also "alert, fully oriented and without gross memory or cognitive deficits." Insight, judgment, and impulse control were also all appropriate. Dr. Weinberg noted that Adderall had improved her cognitive functioning, but that she was still unable to sit and read a book or magazine for any length of time. (*Id.*) Dr. Weinberg assessed her with a GAF score of 59.

In May 2013, Plaintiff met via telephone with Dr. Weinberg for what appears to be her final psychiatric follow-up with him. (Tr. 428-32.) He noted that Plaintiff was noted as cooperative and appropriately talkative, although her mood was anxious. (Tr. 431.) She remained unsettled because she had recently stopped attending group therapy, but she reported an absence of racing thoughts, audible thoughts, paranoid referential ideation, hallucinations, or other signs of psychotic processes. (Tr. 431.) She was noted as alert, fully oriented, and without gross memory or cognitive deficits, and her insight, judgment, and impulse control were all appropriate. Dr. Weinberg diagnosed PTSD; major

22

depression, recurrent, severe; chronic anxiety; and migraine, and assigned a GAF

score of 67.[5]  (*Id.*)

The ALJ's summary of Plaintiff's treatment with Dr. Weinberg focuses on

the April and May 2013 visits, at which point Plaintiff's symptoms had improved.

The ALJ wrote:

> In April 2013, the claimant's psychiatrist Alan
> Weinberg, M.D., noted that the claimant had
> demonstrated that her composure had improved.
> Indeed, he noted that the severity of her distress was
> obviously reduced.  He noted that her speech rate and
> pattern were normal with no signs of cognitive
> disorganization.  She was alert and fully oriented
> without gross cognitive deficits.  Her progress was so
> great that this psychiatrist indicated that the claimant
> was approaching a point in time when she will be able
> to transition to a lower level of care ([Tr. 450-55]).
> When she returned later that month, the claimant
> reported that she was doing better, and even reported a
> partial recovery of her cognitive functioning with the
> addition of Adderall.  Once more, a mental status
> examination no signs of cognitive disorganization and
> she was again fully oriented without gross memory or
> cognitive deficits ([Tr. 438-443]).

***

---

[5] GAF scores in the range of 61 through 70 suggest "[s]ome mild symptoms (*e.g.*, depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  DSM-IV at 34.

> Additionally, the objective medical evidence establishes that the claimant retains the capacity to perform at least moderately detailed instructions in low social demand settings.  During his last evaluation of the claimant in April 2013, Dr. Weinberg noted no gross cognitive deficits and intact communication skills ([Tr. 441]).

> \*\*\*

> In May 2013, Dr. Weinberg assigned a GAF score of 67 to the claimant ([Tr. 432]).  This indicates that the claimant has some mild symptoms, but is generally functioning pretty well.  I gave great weight to this determination.  Dr. Weinberg is a mental health specialist, and he has a long term treating relationship with the claimant.  Hence, he is uniquely qualified to render an opinion regarding the claimant's mental health.  Furthermore, his opinion is well supported by the treatment notes discussed above, which show that her condition had largely stabilized by April 2013.

(Tr. 27 - 30.)

### 3.    Analysis

Generally, substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise.  *Winschel*, 631 F.3d at 1179 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).  Good cause for discounting or disregarding a treating source's opinion exists when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary

24

finding; or (3) the opinion is merely conclusory or is inconsistent with the source's own medical records. *Phillips*, 357 F.3d at 1240-41. The Commissioner's regulations provide a non-exhaustive list of factors that the ALJ should consider in assessing the weight to give a treating source's opinion, including: (1) the length of the treating relationship; (2) the nature and extent of the treating relationship; (3) supportability of the opinion based on relevant evidence; (4) consistency of the opinion with the record as a whole; (5) the source's area of specialty; and (6) other relevant factors that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1527(c); *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 541 (11th Cir. 2016).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 357 F.3d at 1241 (citation omitted). The Court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter*, 808 F.3d at 823. To ensure that proper weight is accorded the opinion of a treating physician, the ALJ must provide "explicit and adequate" reasons for rejecting that opinion. *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991); *see also Phillips*, 357 F.3d at 1241 (requiring the ALJ to clearly

25

articulate his reasons "[w]hen electing to disregard the opinion of a treating physician"). Failure to do so is reversible error. *Lewis*, 125 F.3d at 1440.

I am not persuaded by Plaintiff's argument that the ALJ cherry-picked portions of Dr. Weinberg's progress notes that supported a finding of no disability and ignored the portions that arguably supported the opposite conclusion. While the ALJ's decision could have benefited from a more thorough discussion of Dr. Weinberg's treatment history, the ALJ observed that Plaintiff's symptoms improved during her five-month course of treatment with Dr. Weinberg, which implies that the ALJ had considered the earlier medical records. Moreover, the ALJ discussed Plaintiff's course of treatment at Kaiser Permanente during the seven-month period before April 2013, and she specifically noted that Plaintiff underwent an intensive outpatient treatment program, which "proved to be a painful process for the claimant, as she reported that it was emotionally exhausting, but she generally reported improvement with treatment." (Tr. 27.)

Plaintiff relies exclusively on *Adams v. Colvin*, No. CV 114-104, 2015 WL 3622597 (S.D. Ga. June 9, 2015), in support of her contention that the ALJ considered only the portions of Dr. Weinberg's opinion that showed Plaintiff could work. As with *Moraetes*, Plaintiff holds *Adams* out as a decision of the

Eleventh Circuit, when it is, in fact, a district court order.  [*See* Doc. 7 at 11.] There is no good excuse for twice misrepresenting a district court order as a ruling by the Eleventh Circuit.  But, in any event, *Adams* is inapposite.  In that case, the ALJ considered only part of a treating source's medical source statement while ignoring another part that was contrary to the ALJ's RFC determination. *See Adams*, 2015 WL 3622597, at *3-4.  Here, by contrast, the ALJ did not ignore a portion of a single statement from Dr. Weinberg, but instead considered the longitudinal treatment history, which demonstrated Plaintiff's improvement over a five-month period ultimately culminating with Dr. Weinberg's opinion that she had a GAF score of 67, which indicated she had some mild symptoms (such as depression) or some difficulty in social, occupational, or school functioning, but that she was generally functioning pretty well, has some meaningful interpersonal relationships.  *See* DSM IV at 34.

In sum, I conclude that the ALJ did not ignore portions of Dr. Weinberg's progress notes, and therefore, Plaintiff's second enumeration of error is without merit.

27

## IV.   Conclusion

For the foregoing reasons, it is **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**.

The Clerk is **DIRECTED** to terminate the reference to the undersigned.

IT IS SO RECOMMENDED this 6th day of June, 2017.

_____

JOHN K. LARKINS III
United States Magistrate Judge